UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

ISRAEL BERNAL,

        Plaintiff,

        v.                                       Case No. 05-CV-1327

AMERICAN MONEY CENTERS, INC.,

        Defendant.
_____

## ORDER

Plaintiff Israel Bernal ("Bernal") filed a complaint pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"), alleging that defendant, American Money Centers, Inc. ("AMC"), accessed his consumer credit report and those of other individuals, without their express consent or any other lawful reason. Bernal and approximately 64,000 other Wisconsin residents received a notice of pre-approval for homeowner loans from AMC. Bernal's complaint asserts that the mailing violated 15 U.S.C. § 1681b by not offering a "firm offer of credit" within the meaning of the FCRA, which is essential when a potential creditor accesses someone's credit report without that person's consent. In an order dated October 23, 2006, the court certified a class of all Wisconsin residents who received the mailing. On September 29, 2006, AMC filed a motion for summary judgment asserting that Bernal's complaint should be dismissed as a matter of law. For the reasons stated below, the court is obliged to deny AMC's motion for summary

judgment.

The material facts of the case are largely undisputed. In July 2005, Bernal received the unsolicited notice of pre-approval for homeowner loans from AMC. (Compl. Ex. A.) The first page of AMC's mailing stated, in relevant part:

> You probably get offers for Homeowner Loans all the time, but had no luck and just wasted your time. At American Money Centers (AMC), we are so confidant that we can save you 100's, even 1,000's, of dollars every month, WE GUARANTEE it, or we'll pay you cash. Here's the AMC GUARANTEE*. Preferred Customers Only. We are so confident that we can offer you a loan, and not waste your time, that we will pay you $300.00 if we are wrong! AMC is making this Guarantee to only a select group of Preferred Customers in your area.

(*Id.*) At the top of the mailing, the offer stated in large, bold letters "You're Already Pre-Approved Guaranteed!" (*Id.*) The mailing also provided an example of a hypothetical AMC consolidation loan to demonstrate how consolidating debt can reduce the amount of a consumer's monthly bills. (*Id.*) The second page of the mailing states, in relevant part: "AMC has tailored this loan to all different types of Borrowers, depending on their individual situation and needs. Below is just a small list of our many Loan Programs." (*Id.* at 2.) The following examples of "loan programs" were listed: "No Income Verification, True No Doc (i.e. unemployed), Purchase (Residence, Vacation Home), Borrow 125% of Property Value, Investment Property, Self-Employed, Jumbo Loans, Fixed or Adjustable Rates." (*Id.*) Small print text at the bottom of the second page states, in relevant part:

> Payment based on a fixed rate loan, with an APR of 4.89%. This is a rate that was recently offered, and may, or may not reflect the interest

> rate on which loans are currently closed. * Loan Pre-Approval Guarantee is subject to borrower qualification, verification of homeownership, acceptable title, property collateral, income and credit.

(*Id.*)

Bernal did not authorize AMC to access or use his consumer credit report. Bernal did not respond to the mailing or apply for credit from AMC. (Bernal Dep. 39.) Bernal stated at his deposition that he suffered no financial damages as a result of his receipt of AMC's mailing. (Bernal Dep. 47.)

## ANALYSIS

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 256-57. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). In conducting its review, the court views all facts and draws all reasonable inferences

in favor of the nonmoving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

Bernal's complaint raises a single claim on behalf of a class, asserting that AMC violated the FCRA by failing to include a "firm offer of credit" in its mailing as required by 15 U.S.C. § 1681b(c)(1)(B)(I). AMC has moved for summary judgment, asserting that the mailing qualified as a "firm offer of credit" as a matter of law.

Congress enacted the FCRA to ensure that consumer reporting agencies protected the privacy of the consumer information that they maintained. *See* 15 U.S.C. § 1681(a)(4). Pursuant to the FCRA, a consumer's credit report may be obtained only with written consent of the consumer or for specified "permissible purposes." 15 U.S.C. § 1681b(a). One such permissible purpose is to extend a "firm offer of credit" to the consumer. 15 U.S.C. § 1681a(l). Congress believed that releasing consumer credit information to a company that intended to make a firm offer of credit, "balanced any privacy concerns created by prescreening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004) (quoting S. Rep. No. 103-209, 13 (1993)).

A "firm offer" is "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer . . ." 15 U.S.C. § 1681a(l). The FCRA provides that an offer is firm even if it is

-4-

conditioned upon: (I) additional pre-selected criteria bearing on the consumer's creditworthiness; (ii) verification "that the consumer continues to meet the specific criteria used to select the consumer for the offer," or (iii) a consumer's ability to furnish any collateral that was both established before the selection of the consumer for the offer and disclosed to the consumer in the offer. *See* 15 U.S.C. § 1681a(l)(1-3).

Although the FCRA permits a "firm offer of credit" to be subject to certain conditions, the Seventh Circuit in *Cole* held that in order to qualify as a "firm offer of credit" under the FCRA, the mailing must have value to the recipient. 389 F.3d at 726. The value or benefit to the recipient of a "firm offer of credit" justifies the creditor's access to the information in a recipient's credit report.

> The statutory scheme of the FCRA makes clear that a "firm offer" must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation.

*Id.* at 726-27. The *Cole* court also noted that when determining whether a mailing constitutes a "firm offer of credit," courts should focus on the substance rather than the form of the offer:

> To determine whether the offer of credit comports with the statutory definition, a court must consider the entire offer and the effect of all the material conditions that comprise the credit product in question. If, after

-5-

> examining the entire context, the court determines that the "offer" was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit.

*Id.* at 727-28; *see also Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 955 (7th Cir. 2006) ("A sham offer used to pitch a product rather than extend credit does not meet the statutory definition."). Thus, in determining whether an offer of credit constitutes a "firm offer of credit," the court takes into account the entire offer, including the terms and conditions expressed in the offer. *Cole*, 389 F.3d at 726-28. These terms include, but are not limited to, whether credit approval was guaranteed, the amount of credit to be extended, the precise rate of interest charged, a method for computation of such interest, and the length of the repayment period. *See id.* at 728.

In *Perry v. First Nat'l Bank*, 459 F.3d 816 (7th Cir. 2006), the Seventh Circuit provided further guidance on how an offer qualifies as a "firm offer of credit" under the FCRA. The *Perry* court held that a "firm offer" does not need to convey an "attractive deal for the great majority of consumers;" rather, the offer simply needs to have utility for some consumer to have sufficient value for purposes of the FCRA. *Id.* at 825. The *Perry* court distilled three factors to guide courts in determining whether an offer has value: (1) whether it appears likely that the offer would be honored; (2) whether the material terms of the offer are adequately disclosed; and (3) whether the amount of credit being offered is minimal or subject to some, or subject to so many, limitations that it is of little value. *Id.* No single factor is dispositive, rather a court must consider the offer in its entirety. *Cole*, 389 F.3d at

728. In addition, the Seventh Circuit instructs courts to look to the "four corners of the offer" to determine if it is of value to a "normal consumer" as an offer of credit. *See Murray*, 434 F.3d at 955-56 ("An offer has value to 'the consumer' if it is useful to the normal consumer."). Thus, an offer's value is an objective determination.

AMC asserts that summary judgment is appropriate because AMC made Bernal a "firm offer of credit" in the mailing. In support of this position, AMC states that, like the mailing in *Perry*, Bernal was guaranteed the credit offered and the interest rate was disclosed in AMC's offer, with it noting "Payment based on a fixed rate loan, with an APR of 4.89%." (Compl. Ex. A at 2.) AMC also asserts that, unlike the mailing in *Cole*, which offered credit that could only be used towards the purchase of a vehicle from the dealership extending the offer, AMC's offer was not a "guise for solicitation" of some product unrelated to credit. Instead, AMC states, the only "product" offered by the mailing was credit, with no limitations on the use of the credit.

AMC states that the 4.89% interest rate identified in the mailing was, in fact, the interest rate of the AMC loan offered to Bernal in the mailing. This assertion, however, is belied by the express wording of the mailing which states: "Payment based on a fixed rate loan, with an APR of 4.89%. This is a rate that was recently offered, and may, or may not reflect the interest rate on which loans are currently closed." (Compl. Ex. A at 2.) Thus, the mailing did not state that the 4.89% interest rate would apply to a loan offered to the recipient of the mailing; it merely described

-7-

a recent interest rate offered to a different AMC customer. The example of a recent interest rate offered to a different AMC customer provides little to no basis for determining what terms a consumer might actually receive. Notably, AMC did not address the sentence stating that the 4.89% interest rate "may, or may not reflect the interest rate on which loans are currently closed." (*Id.*)

AMC states that Bernal testified at his deposition that he understood that the 4.89% interest rate was the rate he was being offered. However, Bernal's subjective understanding of the offer is not the focus of the court's inquiry. The value of the offer is considered from the point of view of a "*normal* consumer." *Murray*, 434 F.3d at 955 (emphasis in original); *see also Zawacki v. Discover Fin. Servs.*, 2007 U.S. Dist. LEXIS 12655, *7 (N.D. Ill Feb. 23, 2007) ("An offer's value is an objective determination; it has value to 'the consumer' if it is useful to the normal consumer."). As noted above, the express language of the mailing did not state that the interest rate of the offer was 4.89%; rather, the mailing stated that the 4.89% rate was an example of a rate recently offered to an AMC customer, and that the rate "may, or may not reflect the interest rate on which loans are currently closed. (Compl. Ex. A. at 2.) Thus, even assuming Bernal understood that the mailing offered him a loan with an interest rate of 4.89%, a normal consumer would not have understood that the mailing offered a loan at a 4.89% interest rate.

In addition, a reasonable finder of fact could conclude that AMC's mailing, unlike the mailing in *Perry*, did not disclose the other material terms of the offer. In

-8-

*Perry*, the Seventh Circuit held that even though an offer was not very attractive, it qualified as a "firm offer of credit" because the plaintiff did not argue that she or any class member was denied credit upon responding to the solicitation, the interest rate and the minimum amount of credit offered was disclosed, and the credit could be used for any purchase for which Visa was accepted. *Perry*, 459 F.3d at 825. Similarly, Bernal does not allege that he or any class member was denied credit upon responding to AMC's mailing, and the credit described by AMC's mailing appears to be without restrictions on its use. These factors favor a conclusion that AMC's mailing qualified as a "firm offer of credit." However, AMC's mailing did not disclose the material terms of the offer such as the precise rate of interest charged, a method for computation of such interest, the length of the repayment period, or if there is a minimum loan amount. Indeed, instead of providing details of a specific loan offer, the mailing stated that AMC "has tailored this loan to all different types of Borrowers, depending on their individual situation and needs," and listed several examples of different types of "Loan Programs" such as loans which did not require income verification and loans with fixed or adjustable rates. (Compl. Ex. A at 2.) As a result, a recipient of the mailing would not have been able to discern from the text of the mailing what he or she was being offered. In other words, the offer was too vague to constitute an offer capable of acceptance.

Furthermore, the $300 guarantee in AMC's mailing did not make the mailing a "firm offer of credit." According to the mailing, AMC was so confident it could offer

-9-

the pre-approved recipient of the mailing a loan, that AMC would pay the recipient $300 if no loan was offered. This $300 guarantee did not, however, pertain to terms of an offer of credit; rather, it pertained to AMC's ability to make some offer of credit to the pre-approved recipient. Indeed, a reasonable finder of fact could conclude that the guarantee, which gave recipients of the mailing more incentive to call AMC, supports a conclusion that the mailing was more of an invitation, encouraging recipients to contact AMC to apply for a loan, than a "firm offer of credit."

Moreover, *Cole* demands that the recipient of the mailing, who has given up a modicum of privacy through the use of his or her credit report, be placed in a better position than a non-recipient consumer. 389 F.3d at 726-27. Without some independent value of the offer, the recipient of a mailing is treated no better than a non-recipient consumer. Here, AMC's former telemarketing supervisor testified at his deposition that when a consumer contacted AMC and applied for a loan, the AMC representative created a file which may have indicated that the caller was responding to a mailing. (Marchand Dep. 14-15.) And in response to the question asking whether AMC had a system in place to track responses to a particular mailing, AMC's president, Kenneth L. Cascella ("Cascella"), testified at his deposition that in most cases, a caller to AMC would state that they are responding to a mailing. (Cascella Dep. 7-8.) However, AMC has not presented evidence to indicate that recipients of AMC's mailing were treated better than non-recipient consumers who did not have their credit reports accessed.

-10-

The Seventh Circuit in *Cole* emphasized that in order to qualify as a "firm offer of credit" under the FCRA, the mailing must have value to the recipient; without value to the recipient, the offer is merely an advertisement or solicitation which cannot qualify as a "firm offer of credit." *Cole*, 389 F.3d at 726-28. Furthermore, in *Perry*, the Seventh Circuit also focused on the value of the offer, holding that although the offer was "not an attractive deal for the great majority of consumers," the offer was "not without value." *Perry*, 459 F.3d 825. In reaching this conclusion, the *Perry* court examined the terms of the offer, which included an interest rate of 18.9%, and described how a consumer who had accepted the offer could make almost $3,000 in purchases in one year using the credit. *Id.* The *Perry* court noted that the FCRA was "designed to protect the privacy of consumers' credit histories, not to prevent consumers from making unwise financial choices even when they are provided with all the material terms necessary to make informed decisions." *Id.* at n.2. Here, unlike *Perry*, the court is unable to examine the terms of an offer because AMC's mailing did not disclose the material terms such as the interest rate of the loan for a particular customer, the method by which interest will be compounded, the actual amount of the loan, or the duration of the loan. Without these terms, the court is unable to assess the value of the offer, and the recipients of the mailing were unable to make an informed decision regarding AMC's offer. In sum, viewing the facts in the light most favorable to Bernal, as the court must, a reasonable finder of fact could conclude that AMC's mailing did not provide value to its recipients, did not

disclose the material terms of the offer, and was more of an invitation to call AMC than an offer of credit. Accordingly, a reasonable finder of fact could conclude that AMC's mailing did not qualify as a "firm offer of credit."

AMC also asserts that even if the mailing did not qualify as a "firm offer of credit" as a matter of law, summary judgment is still appropriate because Bernal has not presented evidence to indicate that AMC's alleged failure to comply with the "firm offer" requirement was willful. If a plaintiff can demonstrate that a reporting agency or creditor willfully failed to comply with a requirement under the FCRA, then he or she can recover statutory damages under the statute. *See* 15 U.S.C. § 1681n. However, the statutory language repeatedly makes clear that liability under this section applies only to "willful noncompliance." *Id.* Thus, if the court determines that any violation of the FCRA was negligent, and not willful, then Bernal would not be entitled to statutory damages. *See* 15 U.S.C. §§ 1681n(a) and 1681o(a). In addition, although § 1681o allows a plaintiff to recover attorneys' fees and costs for a negligent violation, if AMC's alleged failure to comply with the "firm offer" requirement was due to negligence instead of "willful noncompliance," then Bernal would have no standing to assert a claim for fees if he suffered no actual damages. *See Crabill v. Trans Union, LLC*, 259 F.3d 662, 665 (7th Cir. 2001) (holding that a plaintiff cannot base standing on a claim for attorneys' fees alone).

Here, Bernal stated at his deposition that he suffered no financial damages as a result of his receipt of AMC's offer. (Bernal Dep. 47.) Although Bernal does not

-12-

Case 2:05-cv-01327-JPS   Filed 08/06/07   Page 12 of 16   Document 58

seek actual damages, he seeks statutory damages and asserts that AMC's alleged violation of the FCRA was willful under § 1681n. (Compl. ¶¶ 20-21.) AMC argues that in order to prove AMC willfully violated the FCRA, Bernal must be able to demonstrate that AMC "knowingly and intentionally" violated the Act. *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004). However, the U.S. Supreme Court recently issued an opinion holding that "reckless disregard" of a requirement of the FCRA would qualify as a willful violation of the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2208 (2007) ("where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well."). The Court in *Safeco* said that it was adopting the common law definition of recklessness, which it described as "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 2215 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Thus, a company does not act in reckless disregard of the FCRA, "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.*

As noted above, Bernal's complaint alleges that AMC's violation of the FCRA was willful under § 1681n. (Compl. ¶¶ 20-21.) In response to AMC's motion for summary judgment, Bernal contends that AMC willfully violated the FCRA by not

-13-

having the mailing reviewed by an attorney prior to sending it, and by not having a system in place to actively solicit whether callers were responding to a particular mailer. Cascella testified at his deposition that he created the mailing at issue in this case and that no attorney reviewed the mailing before AMC sent it out. (Cascella Dep. 7.) In response to the question asking whether AMC had a system in place to track responses to a particular mailing, Cascella stated that in most cases, a caller to AMC would state that they are responding to a mailing. (*Id.* at 7-8.) Bernal asserts that this testimony suggests that AMC did not have a system in place to determine which callers had received a particular mailing. Bernal also states that AMC had no underwriting standards to govern loans resulting from the mailing. (*Id.* at 8-9.) Bernal asserts that this evidence indicates that AMC had no intention of honoring any offer allegedly made in the mailing. Bernal argues that because the mailing did not provide any value to the recipient, and AMC did not take any steps to insure that the mailing complied with the FCRA, the court should conclude that, as a matter of law, AMC willfully violated the FCRA.

In reply, AMC asserts that because Bernal bears the burden of proof of a "willful violation" at trial, and Bernal has failed to produce evidence sufficient to establish a willful violation of the FCRA, AMC is entitled to summary judgment as a matter of law. AMC asserts that Bernal has presented only conclusory allegations to suggest that AMC willfully violated the FCRA. AMC notes that Cascella did not state that AMC has never consulted with an attorney for information regarding the

-14-

FCRA; rather, Cascella stated that he did not recall, but it might have. (Cascella Dep. 18.) Thus, AMC maintains, because Bernal suffered no actual damages, and Bernal has presented only conclusory allegations to suggest that AMC willfully violated the FCRA, summary judgment is appropriate for lack of actual or statutory damages.

However, viewing all facts and drawing all reasonable inferences in favor of Bernal, a reasonable finder of fact could conclude that AMC displayed a reckless disregard for consumers' rights to privacy under the FCRA. For example, a reasonable finder of fact could conclude that AMC did not have a system in place to determine which callers had received a particular mailing, (and whose credit reports had been accessed), so that AMC could treat those callers better than non-recipient customers. Without such a system, a reasonable finder of fact could conclude that AMC had no intention of honoring any offer allegedly made in the mailing, that AMC's mailing had no appreciable value to the recipient, and that the mailing was merely a guise for solicitation. In light of the foregoing, the court cannot conclude that, as a matter of law, AMC's actions were "merely careless" and therefore AMC did not recklessly disregard consumers' rights to privacy under the FCRA. *See Safeco*, 127 S. Ct. at 2208. But the court also cannot conclude that, as a matter of law, AMC's actions entailed "an unjustifiably high risk of harm that [was] either known or so obvious that it should [have been] known." *See id.* at 2215. Thus, whether AMC's conduct rose to the level of willful non-compliance under the FCRA

presents a genuine issue of material fact for the jury to resolve.

In conclusion, because a reasonable finder of fact could conclude that AMC's mailing did not qualify as a "firm offer of credit," and that by accessing the consumers' credit reports and sending the mailing at issue in this case, AMC displayed a reckless disregard for consumers' rights to privacy under the FCRA, the court is obliged to deny AMC's motion for summary judgment.

Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (Docket # 20) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to stay proceedings pending the U.S. Supreme Court's decision in *Safeco* (Docket # 53) be and the same is hereby **DENIED** as moot.

Dated at Milwaukee, Wisconsin this __6th__ day of August, 2007.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge